IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL B. ORTIZ,<br><br>               Petitioner,<br><br>          vs.<br><br>CYNTHIA Y. TAMPKINS, Warden,<br>California Rehabilitation Center,<br><br>              Respondent. | No. 2:16-cv-00428-JKS<br><br>MEMORANDUM DECISION |

Gabriel B. Ortiz, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Ortiz is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the California Rehabilitation Center. Respondent has answered, and Ortiz has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On May 8, 2012, Ortiz was charged with first-degree residential burglary (Count 1) and attempted robbery (Count 2) when, after consuming alcohol, he was found holding a laptop bag outside an apartment with its door open. The information further alleged as to Count 2 that Ortiz was ineligible for imprisonment in county jail and also alleged as to all counts that Ortiz had previously been convicted of two prior serious felonies and that he had served five prior terms in state prison as a result of felony convictions. Ortiz pled not guilty and denied the enhancements. On direct appeal of his conviction, the California Court of Appeal laid out the pre-trial history of Ortiz's case and the following facts underlying the charges against Ortiz and the evidence presented at trial:

***In Limine Motion to Admit Four Instances of Other Crimes***

Before trial, the prosecution anticipated [Ortiz] would tender a defense based on lack of intent due to voluntary intoxication. To prove [Ortiz's] intent to commit burglary and robbery, the prosecutor filed an in limine motion to admit four prior criminal acts under Evidence Code section 1101, subdivision (b). The four other crimes involved the following:

**Robbery in 1990.** In April 1990, [Ortiz] and another person entered a liquor store. [Ortiz] selected a 12–pack of beer and attempted to leave without paying. When confronted by the store clerk, [Ortiz] punched the clerk in the chest and left. [Ortiz] was convicted of robbery.

**Uncharged burglary in 1995.** On September 14, 1995, Gloria Valencia was living with her ex-husband, Juan Ibarra. At 3:40 a.m., Valencia heard noises from outside the residence. When she looked out, she saw two people who appeared to be trying to steal her vehicle. Ibarra told her to stay inside. Valencia called 911, before going into her son's room to await the police. At 3:45 a.m., Woodland Police Officer Timothy Mattos arrived at the house. When he walked through the house, he found [Ortiz] asleep on his stomach on top of an open folding knife in the bedroom closet. The bedroom window had been opened. [Ortiz] misidentified himself. Officer Mattos determined [Ortiz's] name after talking to a local parole agent. [Ortiz] answered some but not all questions, claiming he had been drinking and using methamphetamine and could not remember how he ended up in the closet. No charges were filed as to the offense.

**Uncharged burglary in 1995.** In June 1995, [Ortiz] broke a locked sliding glass door and entered the residence of Enrique Chavez. [Ortiz] grabbed Chavez around the neck and held a knife to his chest, demanding his car and keys. [Ortiz] forced Chavez into his bedroom and took his keys. [Ortiz] fled in the victim's car. Chavez later stated [Ortiz] was a friend of his sister, but the victim did not associate with [Ortiz]. [Ortiz] pled guilty to assault with a knife (§ 245, subd. (a)(1)) and joyriding (Veh. Code, § 10851).

**Trespass in 2004.** About 2:00 a.m. on December 28, 2004, Derrick Russell awoke to a loud noise. [Ortiz] had broken into Russell's apartment by kicking in the door. Russell walked up to [Ortiz] and noticed he had taken several CDs. After Russell took the CDs back, he heard the sound of a folding knife being opened and a blade locking in place. [Ortiz] said, "'[F]aith,'" then turned and walked out of the apartment. Russell had seen [Ortiz] before when defendant had visited [Ortiz's] next door neighbor and had asked to borrow a jack. Sacramento County Sheriff's Deputy Dustin Silva arrived to investigate Russell's emergency call and went to the neighbor's apartment where the deputy found [Ortiz] hiding behind the bathroom door. A search revealed a pocket knife in [Ortiz's] pants pocket. The deputy described [Ortiz] as having been drinking but able to cooperate and respond to questions clearly. [Ortiz] was convicted of trespass after having presented a voluntary intoxication defense. (§ 602.5, subd. (a).)

Before ruling on the prosecutor's in limine motion in this case, the trial court invited defense counsel to respond to the motion:

> "THE COURT: So, what is your position, [defense counsel], on any of the four, or all of the four prior uncharged acts?
>
> "[Defense counsel]: My position, Judge, is two, three and four, I would object on those three."

Defense counsel did not specify any basis for the objection. Defense counsel then objected to the prosecutor's introducing evidence of the 1990 offense on the ground of lack of discovery. However, when the page of discovery was pointed out to him, defense counsel admitted he had it. He then stated: "On that issue, Judge, then I would object and submit to all four prior uncharged acts." Again, defense counsel did not articulate any basis for the objection.

The trial court deemed admissible all four instances of other crimes evidence under Evidence Code section 1101, subdivision (b).

### Motion to Admit a Fifth Instance of Other Crimes Evidence

Early during trial, the prosecution moved to admit an additional act of other crimes evidence, a 2005 theft of beer. The prosecutor sought to show that, in September 2005, [Ortiz] and two women entered a Save Mart store. One of the women created distraction by yelling at the checkout counter. Meanwhile, [Ortiz] and the other woman exited the store, each with an unpaid 30–pack of beer. One of the store employees followed defendant and the woman to their car. A struggle ensued as the employee attempted to retrieve the beer. [Ortiz] flashed a gun, got into the car with his two accomplices, and left. [Ortiz] and the two women were found in a backyard residence with the unopened packs of beer. [Ortiz] was convicted of petty theft with a prior. (§ 666.)

The trial court asked whether either side wished to be heard on the motion, to which defense counsel replied only: "Object and submit." The trial court deemed admissible the evidence under Evidence Code section 1101, subdivision (b).

### Evidence of the Current Offenses

Regarding the current offenses, the prosecution introduced evidence showing the victim lived with her fiancé and their daughter in a studio apartment at the rear of her fiancé's grandparents' home. About 8:30 p.m. on November 11, 2011, while the victim was visiting the grandparents in their home, a man who was never identified knocked on the door. The victim looked out a window and saw her apartment door was open. She went into the apartment and noticed her purse was missing. She saw a man, later identified as [Ortiz], standing at her neighbor's door. [Ortiz] was holding her fiancé's laptop bag. The victim approached defendant and asked to see the bag, explaining the bag looked familiar. [Ortiz] said she was mistaken. The bag was open and the victim saw her fiancé's laptop computer. The victim demanded the bag but [Ortiz] refused. The

victim and [Ortiz] struggled over the bag. They pushed, kicked, and shoved each other. [Ortiz] refused to release the bag so she dragged him and the bag towards her apartment. The grandparents tried to help. The victim's grandmother hit [Ortiz] on the arm with a large tree branch and he released his grip on the bag. The victim took the bag and called 911 from her apartment while the grandparents tried to detain [Ortiz]. [Ortiz] broke free and ran towards the light rail station. Items missing from the victim's apartment included two purses, another laptop bag, a computer monitor, clothes, and a clothes hamper.

Police officers arrived at the scene, obtained [Ortiz's] description, and went in [Ortiz's] direction. Within two blocks, officers found [Ortiz] who saw them and took several quick steps and then walked away. The officers approached [Ortiz] who smelled strongly of alcohol. One officer described [Ortiz] as intoxicated. The victim had also stated [Ortiz] smelled like alcohol. The grandmother said he was drunk and stumbled. [Ortiz's] demeanor went from uncooperative to cooperative but he "curs[ed]" at the officers on the scene and either would not answer questions or gave vague answers. The victim identified [Ortiz] in an in-field show-up as did the grandfather. The booking officer described [Ortiz] as "wide awake and coherent." When they arrived at the jail, [Ortiz] became more cooperative and responded appropriately to directives, giving his name and other identifying information. He never lost consciousness, vomited, or urinated on himself. He was medically cleared for custody.

### Other Crimes Evidence Presented in the Prosecution's Case-in-chief

At trial, the parties stipulated [Ortiz] had been convicted of felony spousal abuse in 1990, robbery in 1990, assault with a deadly weapon, a knife, in 1996, vehicle theft in 1996, and petty theft with a prior in 2006.

The prosecutor also introduced witness testimony regarding the 1995 burglary of Valencia's house and 2004 trespass into Russell's residence.

### Defense Evidence

[Ortiz] testified that on November 11, 2011, he started drinking at 4:00 p.m. He claimed he drank a 24–ounce can of "Four Loko" and some whiskey. He was drunk and trying to find a friend by knocking on several doors near the Fruitridge Light Rail station. At a nearby store, [Ortiz] asked an unidentified man whether he knew [Ortiz's] friend. The unidentified man claimed he did and they walked together sharing some alcohol [Ortiz] had purchased at the store. They knocked on doors but could not find [Ortiz's] friend. The unidentified man walked away and [Ortiz] started knocking on some more doors, explaining, "This is where my memory starts becoming real vague." The unidentified man returned, wanting to get some more alcohol, and had [Ortiz] wait while the man went into a garage, turned on the light and came out with a bag. The man had [Ortiz] hold the bag while the man returned to the garage. [Ortiz] did not realize the bag was stolen. The man did not return so [Ortiz] went to another house to look for the man. [Ortiz] then claimed the victim approached him claiming the bag belonged to her but he denied it did. He claimed he was drunk and overwhelmed. Only later did he realize he had been "bamboozled." He remembered getting hit with a stick, letting go of the bag, and walking away. He denied shoving, kicking, or touching the victim.

On cross-examination by the prosecutor about the 1990 robbery, [Ortiz] admitted he and his brother stole beer from a store.  However, he denied punching anyone.  [Ortiz] accepted the plea deal because he was "young and stupid."  As to the 1995 burglary, [Ortiz] admitted entering Valencia's house but denied he planned to steal.  [Ortiz] acknowledged that in 2004, he broke into Chavez's residence, held him at knifepoint, and stole his car.  Regarding the 2004 trespass, [Ortiz] admitted kicking in Russell's door but claimed he did not remember taking CDs and denied pulling a knife.  Instead, [Ortiz] testified Russell "was talking shit to me through the door because I was arguing with my girlfriend" and [Ortiz] "kicked the door in to fight with [Russell], not to steal, because he was telling me to shut the fuck up."  As to the 2005 petty theft with a prior, [Ortiz] admitted stealing beer from the store but denied having a gun.  During the prosecutor's cross-examination, defense counsel did not object that the other crimes evidence should be excluded.

*People v. Ortiz*, No. C071636, 2014 WL 4259868, at *1-3 (Cal. Ct. App. Aug. 29, 2014).

At the conclusion of trial, the jury found Ortiz guilty as charged.  The prosecution filed a written sentencing memorandum and statement in aggravation of punishment.  Appointed counsel filed a written motion requesting that the court dismiss Ortiz's strike priors pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628, 632 (Cal. 1996).[1]  Because Ortiz waived his right to a jury trial on the alleged prior convictions, the court held a bench trial and found those allegations to be true.  The court also denied Ortiz's *Romero* motion as well as his application for probation.  The trial court subsequently sentenced Ortiz to an aggregate imprisonment term of 26 years and 4 months.

Through counsel, Ortiz appealed the judgment, arguing that: 1) the trial court abused its discretion by admitting evidence of five prior crimes; 2) the prosecutor committed misconduct when cross-examining Ortiz by "belittling his testimony" and "implying that he made

---

[1]	Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law, *see* CAL. PENAL CODE §§ 667(a)(1) & (b)-(I), 1170.12(a)-(d), a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case.

incriminating statements;" 3) the trial court erred in imposing a one-year prior for the 1990 robbery prison term and also using that robbery conviction as the basis for imposing a 5-year serious felony prior; and 4) the trial court erred in imposing a one year prior for the 1996 assault with a deadly weapon prison term and also using that assault conviction as the basis for imposing a 5-year serious felony prior. The California Court of Appeal modified the judgment to strike two of the three one-year enhancements (claims 3 and 4) but unanimously affirmed the judgment against Ortiz in all other respects in a reasoned, unpublished opinion issued on August 29, 2014. *Ortiz*, 2014 WL 4259868, at *7. Ortiz petitioned for review in the California Supreme Court, which was summarily denied on November 17, 2014.

Ortiz then filed a *pro se* petition for habeas relief in the Sacramento Superior Court. In that petition, Ortiz averred that trial counsel was ineffective in failing to: 1) investigate a meaningful defense of voluntary intoxication sufficient to show lack of the specific intent element of the charged offenses; 2) obtain the toxicology report showing his .32 blood alcohol content a few hours after his arrest; 3) investigate a possible alternative defense of mistake of fact and claim of right; 4) locate and present two witnesses who could corroborate his version of events; 5) acquire video footage from the light rail car that Ortiz was on during the evening in question to corroborate his testimony; 6) locate and present testimony from the victim of his 1995 uncharged burglary that was admitted as a prior criminal act at the instant trial to impeach testimony regarding that prior crime; 7) interview a person who called 911 on the evening in question to see if she had any beneficial evidence for the defense; 8) sufficiently object to the prior crimes evidence at trial; 9) seek a continuance to investigate and prepare a defense to the introduction of prior crimes evidence; 10) request jury instructions highlighting his acquittal by a

jury on burglary charges in 2004 and on mistake of fact and claim of right; 11) object when the prosecutor asked Ortiz about a statement he made during his arrest that had been excluded by the court; and 12) impeach the victim and her grandmother with inconsistent statements. Ortiz further argued that: 13) the cumulative effect of trial counsel's errors warranted reversal of his conviction; 14) appellate counsel was ineffective for failing to raise certain ineffective assistance of trial counsel claims on direct appeal; 15) the prosecution knowingly elicited false testimony from the victim and her grandmother and failed to correct it with the inconsistencies noted in Ground 12; 16) the prosecution used deceptive means to secure the guilty verdict; 17) the punishment for the attempted robbery should be stayed because the entire episode was part of one continuous transaction and incident to one objective; 18) the trial court erred in using his probation report as a guide; 19) the trial court erred in using the same fact to impose both an aggravated sentence and an enhancement; and 20) he was entitled to a recalculation of his pre-sentence credits. The superior court agreed that he was entitled to the recalculation of his pre-sentence credits and corrected the award of presentence credits, thus mooting his 20th claim, and denied the habeas petition in a reasoned, unpublished opinion issued on January 7, 2016. Ortiz then raised the same claims in *pro se* petitions filed in the California Court of Appeal and Supreme Court, which were each summarily denied on February 19, 2016, and June 29, 2016, respectively.

While his state habeas petition in the California Supreme Court was pending, Ortiz timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court dated February 24, 2016. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Ortiz simultaneously moved to stay and abey the federal proceedings to allow him to exhaust his claims in state court. Docket No. 2.

This Court, through a previously-assigned magistrate judge granted the request and stayed the proceedings. Docket No. 7. After the California Supreme Court denied Ortiz's state habeas petition, this Court lifted the stay and ordered a response. Docket No. 10. Briefing is now complete, and the case is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Ortiz raises four claims for relief. First, Ortiz contends that trial counsel was ineffective for failing to: 1) investigate or present possible alternative defenses; 2) locate and interview potential witnesses or present particular evidence; 3) object to the admission of prior crimes evidence; 4) object to cross-examination questions and closing argument, and 5) impeach certain prosecution witnesses. Ortiz next avers that appellate counsel was ineffective for failing to properly raise certain ineffective assistance claims on direct appeal. Third, Ortiz argues that the prosecutor committed misconduct by knowingly presenting false testimony and using deceptive means to secure a conviction. Finally, Ortiz claims various sentencing errors.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication

on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under

the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

1.     <u>Procedural Default</u>

As an initial matter, Respondent argues that all of Ortiz's claims are procedurally

defaulted from federal habeas review. Federal courts "will not review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is

independent of the federal question and adequate to support the judgment." *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally

defaulted claims, that is, claims "in which the petitioner failed to follow applicable state

procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The

state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to

adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).

Procedural default does not preclude federal habeas review unless the last state court rendering

judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar.

*Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63

(1989)). "In order to constitute adequate and independent grounds sufficient to support a finding

of procedural default, a state rule must be clear, consistently applied, and well established at the

time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir.

1996) (internal quotation marks and citation omitted).

The Superior Court's citation to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*, 855 P.2d 729 (Cal. 1993), in denying Ortiz's claims on state habeas review reflects that the claims were deemed barred as untimely, *Walker*, 131 S. Ct. at 1126. The Ninth Circuit has held that California's "substantial delay" timeliness standard satisfies the "independent and adequate" requirement. *See Bennett*, 322 F.3d at 582-83; *see also Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate). The Ninth Circuit has further stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505 U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992). An objective factor outside of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

In his traverse, Ortiz avers that his state habeas petition was timely based on the flawed theory that he had a year from the date his conviction became final to file his state habeas petition. Docket No. 31 at 12. The one-year deadline to which Ortiz refers, however, applies to the AEDPA deadline for filing a *federal* petition for habeas relief. *See* 28 U.S.C. § 2244(d)(1),(2). While there is no specific deadline in California for filing a state petition for

writ of habeas corpus in noncapital cases,[2] "the general rule is that the petition must be filed 'as promptly as the circumstances allow . . . .'" *In re Douglas*, 132 Cal. Rptr. 3d 582, 587 (Cal. Ct. App. Oct. 2011). Ortiz provides no justification in his Petition or Traverse as to why the claims were not timely brought before the state courts and thus does not explain why they should not be procedurally barred here. Accordingly, all of Ortiz's claims are subject to dismissal as procedurally barred from federal habeas review.

2.    Merits

In any event, even if Ortiz's claims were not procedurally barred, as discussed below, he nonetheless would not be entitled to relief on their merits.

*i.*    Ineffective Assistance of Counsel (Grounds 1, 2)

Ortiz first argues that trial and appellate counsel rendered ineffective assistance in a variety of ways. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

---

[2]    The California Supreme Court has established a presumption of timeliness in capital cases when filed within 90 days of the final date for the filing of an appellant's reply brief on direct appeal. Policy 3, Standard 2-2.2, *California Supreme Court Policies*, availble at https://www.courts.ca.gov/documents/Policy_3_Standard_2_Compensation _Standards.pdf. The appellate court's policies do not create or modify the timeliness requirements applicable to non-capital habeas petitions. *In re Clark*, 855 P.2d 729, 751 (Cal. 1993), *superceded by statute on other grounds as stated in Briggs v. Brown*, 400 P.3d 29 (Cal. 2017). In any event, Ortiz filed his state petition much later than that 90-day presumptively-timely deadline.

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Ortiz must show that either his trial counsel's or his appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In the first ground, Ortiz contends that trial counsel was ineffective for failing to: 1) investigate and present an intoxication defense; 2) locate and interview potential witnesses or present particular evidence; 3) effectively object to the introduction of prior crimes evidence; 4) request jury instructions highlighting his acquittal on a prior charge and on mistake of fact or claim of right; 5) object to the cross-examination of Ortiz about his post-arrest statement; 6) object to cross-examination of Ortiz and improper closing argument; and 7) impeach the victim-witnesses' with their prior inconsistent statements to the police.

With regard to his claim that counsel should have investigated and presented an intoxication defense, the record reflects that counsel argued that Ortiz was drunk during the event and Ortiz himself, along with other witnesses, testified that he was drunk. Moreover, the record reflects that the jury was instructed with the definition of intoxication and on the voluntary intoxication defense, and that defense counsel argued it. Although Ortiz now claims that counsel should have presented other witnesses and evidence on Ortiz's alcoholism and blackout states, he fails to show that such evidence would have led to a better outcome, as necessary to show deficiency or prejudice under *Strickland*.

Likewise, he faults counsel for failing to present two witnesses or acquire video footage from the lightrail car that Ortiz took the evening of the incident. But all the evidence and witnesses that Ortiz identifies fail to exonerate him or materially corroborate Ortiz's version of events. Similarly, Ortiz fails to provide any valid state law basis on which counsel could have successfully challenged the introduction of prior crimes evidence or objected to the cross-examination of Ortiz. Moreover, Ortiz does not establish that a request for jury instructions highlighting his acquittal on a prior charge and on mistake of fact or claim of right would have

been granted, or that the provision of such instructions would have led to a better outcome. Finally, as discussed in Ground 3, *infra*, impeaching the victim witnesses with their prior statements would not be helpful because, as the superior court noted, any inconsistencies between the police reports and their trial testimony was minor and immaterial. As such, counsel cannot be deemed deficient in his actions, or that counsel's actions prejudiced Ortiz, and Ortiz is not entitled to relief on any of his ineffective assistance of trial counsel claims.

In Ground 2, Ortiz claims that appellate counsel was ineffective for presenting additional ineffective assistance of trial counsel claims in a footnote rather than raising them under separate heading. But as discussed above, all of Ortiz's ineffective assistance of trial counsel claims fail, and appellate counsel therefore cannot be faulted for failing to raise them on direct appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument). Ortiz is thus not entitled to relief on this ground either.

> *ii*.    Prosecutorial Misconduct (Ground 3)

Ortiz next contends that the prosecutor committed misconduct by: a) knowingly presenting false testimony that she failed to correct, and b) using deceptive and inflammatory means to secure the guilty verdict by introducing the 1995 prior crimes evidence to show Ortiz's intent to burglarize. A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient

significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)). Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—*i.e.*, that absent the alleged impropriety, the verdict probably would have been different.

Ortiz contends that the prosecution knowingly presented the false testimony of the victim, Meuy Fin Saelee, and her grandmother, Meuy Chan Saephan. "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not support Ortiz's contention that the prosecution knowingly introduced perjured testimony. Indeed, Ortiz has failed to show by way of admissible, competent evidence that any prosecution witness perjured himself or herself at trial. Again, this lack of evidentiary support is fatal to his claim. *Woodford*, 537 U.S. at 15. Petitioner's bare and conclusory allegations are manifestly insufficient to warrant habeas corpus relief. *Jones v. Gomez*, 66 F.3d 199, 204–05 & n. 1 (9th

Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). To the extent that the witness-victims' statements may have been inconsistent or inaccurate as Ortiz alleges, as the Ninth Circuit has noted, "it is established law that minor inconsistencies, not bearing on the heart of the case, do not make a witness perjurious." *Gudiel-Paul v. Ashcroft*, 31 F. App'x 467, 468 (9th Cir. 2002).

Nor can Ortiz show that the prosecutor committed misconduct by introducing the 1995 prior crimes evidence or arguing that it showed his intent to burglarize. Here, the trial court determined that, as a matter of California state law, the prosecution was entitled under California Evidence Code § 1101(b)[3] to present his uncharged prior offenses as evidence of Ortiz's intent to burglarize. The "[a]dmission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it." *Boyde*, 404 F.3d at 1172 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)) (internal quotation marks omitted; emphasis in original); *see also Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus).

To the extent Ortiz argues that the prior crimes evidence inflamed the jury by suggesting his propensity to commit the present crime, the United States Supreme Court has never held clearly that the introduction of propensity evidence violates due process. *See Estelle*, 502 U.S. at

---

[3] That section provides that, although evidence of a person's character is generally inadmissible when offered to prove his or her conduct on a specific occasion, evidence that a person committed another crime may be admissible "when relevant to prove some fact (such as . . . intent . . .) other than his or her disposition to commit such an act." CAL. EVID. CODE § 1101. Section 1101 is the California counterpart of Federal Rule of Evidence § 404.

75 n. 5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution). In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Ortiz is thus not entitled to relief on this ground.

### *iii.* Sentencing Errors (Ground 4)

Finally, Ortiz claims a variety of sentencing errors. Namely, Ortiz avers that: 1) his term on attempted robbery should be stayed pursuant to California Penal Code § 654;[4] 2) his custody credits should be recalculated to award him 242 days of conduct credit; 3) the trial court relied on an erroneous probation report in sentencing him; and 4) the trial court imposed used the same facts to erroneously impose both an aggravated sentence and a Penal Code § 667.5(b) sentencing

---

[4] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

enhancement. Ortiz also raised these claims in his habeas petition in the state courts. The superior court agreed that Ortiz was entitled to a recalculation of his custody credits, but denied the other claims as untimely under *Robbins/Clark* and without merit.

The constitutional guarantee of due process is fully applicable at sentencing. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). However, state law sentencing errors are not cognizable on federal habeas review. *See Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989). Moreover, as the Ninth Circuit has explained, a petitioner's contention that a state trial court improperly exercised its discretion under state sentencing law generally does not allege any cognizable claim for federal habeas relief. *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901 (2003), remanded to 66 F. App'x 136 (9th Cir. 2003). Nevertheless, a federal court may vacate a state sentence imposed in violation of due process, for example, if a state trial judge enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995); *Walker v. Endell*, 850 F.2d 470, 477 (9th Cir. 1987).

Ortiz fails to establish a due process violation here. He does not show that his sentence was based on materially false or unreliable information or that it was the product of improper judicial animus. As the superior court concluded, Ortiz fails to show that any purported error in the probation report affected the judgment. The remaining claims he unsuccessfully raised on state habeas review all involve alleged state law errors not cognizable on federal habeas review.

Furthermore, to the extent Ortiz's claim could be liberally construed to assert a violation of the Eight Amendment's prohibition against cruel and unusual punishment, such claim is also

without merit. While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1). In this case, Ortiz was sentenced to an aggregate term of 26 years and 4 months' imprisonment for first-degree burglary and attempted robbery in a case where he physically struggled with the victim. Ortiz cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual). The California Supreme Court's affirmance of Ortiz's sentence was therefore not "contrary to, or . . . an unreasonable application of," the gross disproportionality principle, the contours of which are unclear. *Lockyer*, 538 U.S. at 72-73. Ortiz therefore cannot prevail on any challenge to his sentence.

## V. CONCLUSION AND ORDER

Ortiz is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 27, 2020.

    /s/James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
Senior United States District Judge
